**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| Gary Rodríguez-Rodríguez,<br>Plaintiff,<br>v.<br>Alida Arizmendi, et al.,<br>Defendants. | **Civil No. 24-1388 (GMM)** |

**OPINION AND ORDER**

Pending before the Court is Defendants'[1] *Motion in Limine to Preclude Testimony at Trial and Documents Requested During Discovery Not Produced by Plaintiff* ("*Motion in Limine*"). (Docket No. 80). For the reasons explained below, the *Motion in Limine* is **GRANTED IN PART AND DENIED IN PART.**

## I. FACTUAL AND PROCEDURAL HISTORY

This is a political discrimination suit. On March 17, 2025, Plaintiff Gary Rodríguez-Rodríguez ("Mr. Rodríguez" or "Plaintiff") filed an *Amended Complaint* against Defendants pursuant to the First and Fourteenth Amendments of the United States Constitution; 42 U.S.C. § 1983; Article II, Sections 1, 4, 6, and 7 of the Puerto Rico Constitution; Act No. 90-2020; and Article 1536 of the Puerto Rico Civil Code. (Docket No. 34).

[1] Hon. Jorge Ramos Ruiz ("Mayor Ramos"), in his official and personal capacity as Interim Mayor of the Municipality of Mayagüez, Alida Arizmendi ("Mrs. Arizmendi") in her official and personal capacity as Director of the Art and Culture Office, Yanira Robert ("Mrs. Robert") in her official and personal capacity as Director of Human Resources, and the Municipality of Mayagüez.

Therein, Plaintiff alleges that he began working for the Municipality of Mayagüez on August 30, 2019. (Id. at 5). Mr. Rodríguez further asserts that in the primary election held on June 2, 2024, he worked as a poll officer for the New Progressive Party ("NPP") at the Communal Center of Leguizamo ward in Mayagüez. (Id. at 6). During that election, Mayor Ramos was a candidate for mayor of the Municipality of Mayagüez for the Popular Democratic Party ("PDP") and won the nomination. (Id.). According to Mr. Rodríguez after the primary election, he was subjected to a hostile work environment and was stripped of all the functions and responsibilities of his job by Defendants because of his affiliation with the NPP and participation in the primary election. (Id. at 6-8). Mr. Rodríguez alleges that since then he "was subject of grave inferior working conditions, being politically harassed, feeling humiliated for no other reason that having worked in the primaries for the [NPP]." (Id. at 8).

Following various procedural developments, on March 25, 2025, the Court issued its *Case Management Order*. (Docket No. 37). After the parties requested a joint extension of time, conclusion of discovery was set for May 28, 2026. *See* (Docket Nos. 49-54). On July 3, 2026, the parties filed a *Joint Pretrial Conference Report*. (Docket No. 64). Thereafter, the Court set a pretrial conference for July 7, 2026, which due to technical difficulties, was continued to and held on July 21, 2026. *See* (Docket Nos. 66; 79). During the pretrial conference, the Court set the jury trial for

October 20, 2026, and allowed the parties to file their motions in limine by September 21, 2026. (Docket No. 79).

Accordingly, on August 13, 2026, Defendants filed their *Motion in Limine*. (Docket No. 80). Therein, Defendants request the Court to preclude Plaintiff from: (1) testifying about his emotional and psychological state after the events alleged in the *Amended Complaint* and the treatment he received after such events, including the treatment and records of Dr. Yazmin Ríos ("Dr. Ríos") and APS Clinics; (2) testifying about and showing at trial his alleged appointment as a poll officer in the primaries for the NPP; and (3) testifying about and showing at trial any text messages and pictures regarding his allegations in the *Amended Complaint*. (Id. at 9). Defendants posit that Plaintiff failed to produce documents and information: (1) in response to interrogatories served on April 28, 2025, and (2) in response to a request for documents made on March 27, 2026, after Plaintiff's deposition. (Id. at 3-6). Also, Defendants argue that Plaintiff failed to produce such evidence prior to the conclusion of discovery. (Id. at 5-6). Specifically, as to the evidence about his emotional and psychological state and treatment, Defendants argue that on July 17, 2026, Plaintiff produced some medical records from Dr. Yazmin Ríos, a psychologist not mentioned during his deposition, covering May 18, 2022 to May 8, 2026, and a record from APS Clinics, on July 17, 2026. (Id. at 6-7). As such, Defendants assert that because of the untimely production of any

evidence of medical treatment they will be unable to challenge any claim of emotional or psychological harm, as they were precluded from deposing Plaintiff as to the matters produced after discovery had concluded. (Id. at 7-8).

Regarding the evidence of the alleged appointment as a poll officer in the primary election for the NPP, Defendants argue that Plaintiff also failed to respond to interrogatory number 8, which specifically requested "all documents" supporting the allegations included in the *Amended Complaint*. (Id. at 3). Defendants assert that on July 2, 2026, the day before the parties filed their *Joint Pretrial Conference Report*, Plaintiff informed in writing that the certification showing that he worked during the primary election as a poll worker had been requested and would be provided but that, as of the filing of the *Motion on Limine*, Plaintiff had not produced it. (Id. at 8). Defendants argue that the same occurs with all other documents requested from Plaintiff during written discovery, the production of which was again requested at his deposition and in the letters sent on March 27, 2026 and June 25, 2026, but which were not produced. (Id. at 9).

In opposition, on August 28, 2026, Plaintiff filed his *Reply to Defendants Motion in Limine*. (Docket No. 81). Therein, Plaintiff states that the medical records he had received were sent to Defendants, and that a re-evaluation of his treatment dated July 20, 2026, was sent that day. Plaintiff further contends that he cannot send medical records he has not received, and that

Defendants could have requested his authorization to inspect or copy his medical records but did not do so. (Id. at 2). Moreover, Plaintiff asserts that he had received, and was sending to Defendants that day, a copy of his appointment as poll officer in the 2024 primary election, as well as his appointment, issued by the State Elections Commission, to work in the general election. (Id.) In addition, Plaintiff argues that he has the right to testify about his medical conditions because it is of his personal knowledge, and that he can also testify about the fact that he worked in the primaries for the NPP. (Id.). On August 31, 2026, Defendants filed their *Reply to "Reply to Defendants Motion in Limine"*. (Docket No. 84). Therein, Defendants reiterate their arguments and posit that Plaintiff should not be allowed to present any document to prove his participation in the primary election and that "[t]o allow the plaintiff to show evidence of medical treatment and/or testify about it would be prejudicial for the defendants, for they never had the opportunity to examine such evidence while discovery was open and to hire an expert that would testify about the lack of causation between the alleged adverse working conditions and the treatment." (Id. at 2). Defendants also argue that Plaintiff's opposition should be disregarded as untimely under Local Rule 7(b), (Id. at 2); that the poll-officer appointment documents a copy of a sticker and a handwritten document— are not self-authenticating under Federal Rule of Evidence 902(4)(B), (Id. at 2-3); and that Defendants should be

allowed to raise the absence of such evidence at trial without opening the door to its admission. (Id. at 3). Notably, Defendants do not object to Plaintiff testifying that he worked in the 2024 primary and general elections, (Id.), and they distinguish between Plaintiff testifying about how he felt as a result of the alleged adverse working conditions and testifying about medical treatment of which Defendants had no notice. (Id. at 2).

The matter is now fully briefed for disposition.

## II. LEGAL STANDARD

### A. Fed. R. Civ. P. 26 and 37

"District courts have considerable autonomy in managing discovery proceedings. This authority extends both to setting disclosure deadlines and meting out sanctions when parties fail to honor such deadlines." González-Rivera v. Centro Médico Del Turabo, Inc., 931 F.3d 23, 27 (1st Cir. 2019). Federal Rule of Civil Procedure 26(a)(1)(A)(ii) requires a party to, "without awaiting a discovery request, provide to the other parties ... a copy —or a description by category and location— of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A)(ii). The failure to do so is subject to the potential exclusion of the witness or evidence. Fed. R. Civ. P. 37(c)(1).

Accordingly, Rule 37(c)(1) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). However, Rule 37 also affords the Court leeway to impose a lesser sanction where appropriate. Fed. R. Civ. P. 37(c)(1)(A)-(C).

Therefore, whether a party's witnesses and exhibits should be excluded based on a failure to timely disclose "is not a strictly mechanical exercise" and Rule 37(c)(1) provides for alternative sanctions. Esposito v. Home Depot U.S.A., Inc., 590 F.3d 72, 78 (1st Cir. 2009). "[D]istrict courts have broad discretion in meting out ... sanctions for Rule 26 violations" that "range from limited exclusion to dismissal of the case." LaPlace-Bayard v. Batlle, 295 F.3d 157, 162 (1st Cir. 2002) (*citing* Ortiz-López v. Sociedad Española de Auxilio Mutuoy Beneficiencia de P.R., 248 F.3d 29, 34 (1st Cir. 2001)). To determine if preclusion is warranted, the First Circuit considers several factors:

> (1) the history of the litigation; (2) the sanctioned party's need for the precluded evidence; (3) the sanctioned party's justification (or lack of one) for its late disclosure; (4) the opponent—party's ability to overcome the late disclosure's adverse effects—e.g., the surprise and prejudice associated with the late disclosure; and (5) the late disclosure's impact on the district court's docket.

Esposito, 590 F.3d at 78 (*citing* Macaulay v. Anas, 321 F.3d 45, 51 (1st Cir. 2003)) (internal quotations omitted). Moreover, "[b]ecause an important object of [the discovery] rules is to avoid trial by ambush, the district court typically sets temporal parameters for the production of such information." Macaulay, 321 F.3d at 50 (*citing* Fed. R. Civ. P. 16(b)). Such a timetable "promotes fairness both in the discovery process and at trial." Thibeault v. Square D Co., 960 F.2d 239, 244 (1st Cir. 1992).

## III. DISCUSSION

On **July 3, 2026**, the parties filed their *Joint Pretrial Conference Report* and Plaintiff reported only excerpts from Mr. Rodríguez's personnel record as documents to be used at trial. (Docket No. 64 at 16, § VII.A.1). Notably, no reference to medical records, to any document evidencing Plaintiff's appointment as a poll officer, or to any other document, was included. In their *Motion in Limine*, Defendants contend that on **July 17, 2026,** Plaintiff produced some medical records and a record from APS Clinics. (Docket No. 80 at 6). Defendants also argue that even after the taking of depositions, the end of discovery, and the pretrial conference held on July 21, 2026, Plaintiff had failed to provide documentation of his appointment as poll officer, as well as other documents requested during discovery. (Id. at 4-8). Plaintiff ultimately sent Defendants copies of his poll-officer appointments and concedes the late disclosure of the medical records and even admits that a re-evaluation of Mr. Rodríguez's

treatment dated **July 20, 2026** was sent on **August 28, 2026.** (Docket No. 81 at 2).

Therefore, there is no dispute that Plaintiff disclosed the documentary evidence late. Here, even though the information requested by Defendants concerned Plaintiff's own medical treatment and political activity, matters within his own knowledge, Plaintiff did not provide discovery as required by the Rules. Plaintiff served his interrogatory answers approximately five months[2] after the Rule 33(b)(2)[3] deadline regarding the interrogatories, and nearly five months[4] of the Rule 34(b)(2)(A) deadline[5], regarding documents requested after Plaintiff's deposition. Moreover, the documentary evidence was produced months after the close of discovery, and also past the filing of the pretrial memorandum and the pretrial conference.

---

[2] Defendants served interrogatories on April 28, 2025 and after follow-up, Plaintiff served his answers on October 29, 2025, but failed to include any documents. (Docket No. 80 at 3-5.

[3] Absent a stipulation or order by the court, Rule 34(b) requires the party to whom an interrogatory has been served to respond or make a timely objection within 30 days. *See* Fed. R. Civ. P. 33.

[4] On March 26, 2026, Defendants took Plaintiff's deposition and on March 27, 2026, Defendants sent Plaintiff, a letter requesting documentation and information which included evidence that Plaintiff worked on primary day as poll officer; text messages, and medical files. On June 25, 2026, Defendants followed up on the request; however, the requested documents were not produced. (Docket No. 80 at 4-6; 80-2; 80-3; 80-4). On July 2, 2026, Plaintiff responded that "[a]s to the requested documents, the certification that plaintiff Rodríguez worked as pole [sic] officer for the New Progressive Party in the Legizamo Ward have been requested, as well as the medical file and will be provided as well as the medical file." (Docket No. 80-5).

[5] Absent a stipulation or order by the court, Rule 34(b) requires the party to whom a document request is served to respond within 30 days. *See* Fed. R. Civ. P. 34.

As noted, under Rule 37(c)(1), Plaintiff must be precluded from using those documents at trial unless the Court finds that the failure "was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The question then becomes whether the documentary evidence in controversy should be excluded under Rule 37. To make that determination, the Court considers the factors set out by the First Circuit. Plaintiff, as the party facing preclusion, bears the burden of showing that his failure was substantially justified or harmless. *See* Wilson v. Bradlees of New England, Inc., 250 F.3d 10, 21 (1st Cir. 2001).

As to the first factor, the history of the litigation, the Court scrutinizes the procedural setting and timing of Plaintiff's late disclosure. Here, it is important to take a closer look into the procedural history leading up to, and immediately following, Plaintiff's late disclosure. The original *Complaint* was filed on August 28, 2024, and an *Amended Complaint* was filed on March 17, 2025. (Docket Nos. 1; 34). Thereafter, the Court issued a *Case Management Order* and, after granting the parties' joint request for an extension, set the conclusion of discovery for **May 28, 2026.** As previously highlighted, the Court held a pretrial conference on July 21,2026, after the parties filed *the Joint Pretrial Conference Report*. Throughout that time, Defendants repeatedly sought the documents at issue through interrogatories served in April 2025, at Plaintiff's March 26, 2026 deposition, and by letters dated March 27, 2026, and June 25, 2026. Yet, Plaintiff, who answered

the interrogatories some five months late, did not produce them before discovery closed. Instead, the medical records and the poll-officer appointment evidence surfaced only after the *Joint Pretrial Conference Report* was filed, and some only after the *Motion in Limine* was filed, less than two months before a trial scheduled for October 20. Therefore, this factor weighs in favor of exclusion.[6]

As to the second factor, "[t]he sanctioned party's need for the evidence," Esposito, 590 F.3d at 78, it weighs somewhat in Plaintiff's favor. Indeed, Plaintiff needs both the poll-officer appointment documents and the medical records to support his claims as well as to prove his damages. However, preclusion of the late-disclosed documents does not amount to dismissal, as Plaintiff has access to other evidence, including his own testimony, to establish his claims. And Defendants do not object to Plaintiff testifying, based on his personal knowledge, that he worked as a poll officer in the 2024 primary and general elections, (Docket No. 84 at 3), and, as explained below, Plaintiff may also testify about the emotional distress he personally experienced.

---

[6] Defendants' March 27, 2026, and June 25, 2026 letters reiterated document requests first made in Defendants' April 28, 2025 interrogatories. (Docket Nos. 80 at 3-5; 80-2; 80-4). Whether or not those letters independently triggered the thirty-day response period of Rule 34(b)(2)(A), Plaintiff remained under a continuing duty to timely supplement his interrogatory answers, in which he had identified his poll-officer appointment as supporting documentary evidence and represented that his medical records would be provided. *See* Fed. R. Civ. P. 26(e)(1)(A).

The third factor to consider is "the sanctioned party's justification (or lack of one) for its late disclosure." Esposito, 590 F.3d at 78. This too weighs in favor of exclusion. Plaintiff did not justify or explain his late disclosure. On the contrary, Plaintiff concedes that there has been a late disclosure. Moreover, Plaintiff only argues that exclusion is not warranted because Mr. Rodríguez can testify as to facts alleged in the *Amended Complaint* which are of his personal knowledge and does not have to present documents to ratify his testimony. (Docket No. 81 at 2). Thus, the record is devoid of any evidence that would justify the late disclosure.

As to the fourth factor, "the opponent-party's ability to overcome the late disclosure's' adverse effects—e.g., the surprise and prejudice associated with the late disclosure,", Esposito, 590 F.3d at 78, Plaintiff has failed to make any meaningful argument to establish that his late disclosure is harmless. On the contrary, Defendants have established that the late production of the requested information —the medical records, the poll-officer appointment documents, and other documents such as text messages and photographs -is not harmless. Defendants contend they made strategic decisions, such as whether to employ an expert or reopen Plaintiff's deposition, based on the disclosures and production that were available to them at the close of discovery. (Docket Nos. 80 at 7; 84 at 2). Specifically, Defendants posit that if Plaintiff had produced the medical records in a timely manner

during the months of April and May 2026, they would have had the opportunity to reopen Plaintiff's deposition to inquire about his emotional and psychological state and the treatment received before and after the events alleged in the *Amended Complaint*. (Docket No. 80 at 7). At this moment, Defendants cannot do that, as discovery concluded in May. The same applies to other documentary evidence that was untimely produced and on which Plaintiff could rely to support his political discrimination claim. As for the text messages and photographs, the Court is unable to identify in the record indication that Plaintiff has produced them all. The fourth factor also weighs heavily in favor of preclusion.

Finally, the Court considers "the late disclosure's impact on the district court's docket." Esposito, 590 F.3d at 78. As has been previously highlighted, discovery concluded in May 2026. Thus, not precluding the use of the documents in controversy would require reopening discovery to avoid prejudice against Defendants, extending this litigation that commenced in August 2024. This factor, too, weighs in favor of exclusion.

For the reasons discussed, Plaintiff's the late disclosure was neither "substantially justified" nor "harmless." Consequently, the untimely disclosure (or nondisclosure) of the medical records, the poll-officer appointment documents, and any other documents requested as part of discovery as detailed in the *Motion in Limine*, warrants exclusion. Therefore, Plaintiff is

precluded from introducing such documentary evidence at trial and is barred from introducing the documents' contents or relying on the information they contain during the testimony Mr. Rodríguez will provide. However, this limitation does not preclude otherwise admissible testimony based on Mr. Rodríguez's independent personal knowledge, subject to the Federal Rules of Evidence. Specifically, Plaintiff may testify about his own emotional and psychological state as he personally experienced it but may not testify about any diagnosis or about the treatment he received from Dr. Ríos, APS Clinics, or any other provider, nor offer any testimony requiring specialized knowledge. *See* Fed. R. Evid. 701(c). Plaintiff may also testify, based on his personal knowledge, that he worked as a poll officer for the NPP in the 2024 primary and general elections, but may not introduce documents to that effect. Plaintiff may not introduce, or testify about the contents of, any text messages or photographs requested in discovery that were not produced before its close. Given this disposition, the Court need not reach Defendants' alternative arguments under Federal Rules of Evidence 401, 403, and 902(4)(B).

## IV. CONCLUSION

For the reasons explained above, the *Motion in Limine* is **GRANTED IN PART AND DENIED IN PART.** Plaintiff is precluded from introducing at trial or testifying about the contents of the medical records of Dr. Ríos and APS Clinics (including the July 20, 2026 re-evaluation), the poll-officer appointment documents,

and any text messages, photographs, or other documents requested in discovery and not produced before its close, and from testifying about the medical treatment he received.

Plaintiff may testify, based on his personal knowledge and subject to the Federal Rules of Evidence, about his own emotional and psychological state and about his work as a poll officer in the 2024 primary and general elections.

IT IS SO ORDERED.

In San Juan, Puerto Rico, on October 12, 2026.

s/Gina R. Méndez-Miró
GINA R. MÉNDEZ-MIRÓ
UNITED STATES DISTRICT JUDGE